Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/30/2026 12:08 AM CDT

- 329 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

Vogtscapes, Inc., and Nebraska Digging
Services LLC, appellants, v. Nemaha
County, Nebraska, appellee.

___ N.W.3d ___

Filed June 23, 2026.    No. A-25-481.

1. **Summary Judgment: Appeal and Error.** An appellate court reviews
   the district court's grant of summary judgment de novo, viewing the
   record in the light most favorable to the nonmoving party and drawing
   all reasonable inferences in that party's favor.
2. **____: ____.** An appellate court affirms a lower court's grant of summary
   judgment if the pleadings and admitted evidence show that there is no
   genuine issue as to any material facts or as to the ultimate inferences
   that may be drawn from the facts and that the moving party is entitled to
   judgment as a matter of law.
3. **Contracts.** The interpretation of a contract and whether the contract is
   ambiguous are questions of law subject to independent review.
4. **Summary Judgment.** Summary judgment is proper when the pleadings
   and the evidence admitted at the hearing disclose that there is no genu-
   ine issue as to any material facts or as to the ultimate inferences that
   may be drawn from those facts and that the moving party is entitled to
   judgment as a matter of law.
5. **Summary Judgment: Evidence.** The evidence that may be received on
   a motion for summary judgment includes depositions, answers to inter-
   rogatories, admissions, stipulations, and affidavits.
6. **Summary Judgment.** In the summary judgment context, a fact is mate-
   rial only if it would affect the outcome of the case.
7. **Contracts: Intent.** The interpretation given a contract by the parties
   themselves while engaged in the performance of the contract is one of
   the best indications of the true intent of the parties and, ordinarily, that
   construction of the contract should be enforced.
8. **Contracts.** The parties to a contract may avoid a provision where their
   words, acts, or conduct amount to a waiver, modification, rescission,

- 330 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

abrogation, or abandonment of the provision, or the party claiming the benefit of the provision is estopped to rely on it.

Appeal from the District Court for Nemaha County: JULIE D. SMITH, Judge. Reversed and remanded for further proceedings.

Tevyn L. Waddell and Craig F. Martin, of Lamson Dugan & Murray, L.L.P., for appellants.

Jeffery R. Kirkpatrick, of Governmental Law, L.L.C., for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Vogtscapes, Inc., and Nebraska Digging Services LLC (Nebraska Digging) (collectively Appellants) appeal from the Nemaha County District Court's order granting Nemaha County's motion for summary judgment and dismissing Appellants' complaint with prejudice. Appellants contend that the district court erred in granting summary judgment in favor of Nemaha County when genuine issues of material fact existed. For the reasons stated herein, we reverse, and remand for further proceedings.

## STATEMENT OF FACTS

### BACKGROUND

This appeal arises out of a construction dispute between Nemaha County and Appellants. Nemaha County retained Vogtscapes as a general contractor to replace a county road bridge with a concrete box culvert (the Project). Nemaha County retained Mainelli Wagner & Associates, Inc. (Mainelli Wagner), to serve as the engineer for the Project, and Vogtscapes subcontracted with Nebraska Digging to perform dirt work associated with the Project. In connection with the dirt work, Nebraska Digging contends that Nemaha County and Mainelli Wagner requested that Nebraska Digging

- 331 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

relocate a dirt stockpile created during the initial grading and excavation process. In short, at the end of the Project, Appellants claimed the work performed in relocating the stockpile constituted additional work on the Project for which Nebraska Digging was entitled to additional compensation over and above its original contract price. Nemaha County refused Appellants' claim on the basis that relocating the dirt stockpile did not constitute additional work, that it was work contemplated as part of the original contract price, and that Appellants failed to obtain a written change order in order to seek additional compensation.

## Contract

The contract between Vogtscapes and Nemaha County established that the contract price was $752,311 "with no additions or deletions, except by written change order as set forth in the Contract Documents." It is undisputed that no written change orders were ever executed in connection with the Project. Notably, the contract contained several other provisions relevant to this appeal.

• Vogtscapes was retained to perform the "work" on the Project.
• The "work" itself was to be completed "according to the Contract Documents, including the Standard Specifications and any Standard Plans."
• The Project plans, specifications, and drawings were prepared by Mainelli Wagner.
• Mainelli Wagner was separately required to provide "general supervision and direction of the Work and [would] decide any questions that [arose] with reference to the intent of the Contract Documents and compliance therewith."
• The contract provided that "[Mainelli Wagner] is the agent of [Nemaha County] only to the extent provided in the Contract Documents or when specifically authorized to act on [Nemaha County's] behalf."
• Vogtscapes, as the contractor, was responsible for "construction means or methods to successfully perform the Work;

- 332 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

supervision or coordination of the Work in accordance with the Contract Documents; or any health or safety precautions required by any regulatory agency, industry standards, or common sense."

• The earthwork section of the contract provided that "[e]xcavation and backfill required by the Work will be considered subsidiary to items for which direct payment is made."

## WORK ON THE PROJECT

In connection with the summary judgment proceedings, Appellants supplied the following facts:

• Mainelli Wagner designated Dean Britt to serve as construction inspector for the Project.

• Michael Weiss, a member of the Nemaha County Board of Commissioners, was in regular communication with Vogtscapes and Mainelli Wagner.

• Keith Sunderman served as the project manager for Vogtscapes.

• Vogtscapes subcontracted with Nebraska Digging to perform dirt work on the Project.

• Tyler Rosenow, a 50-percent owner of Nebraska Digging, represented Nebraska Digging on issues concerning the Project and concerning issues relevant to the litigation regarding the Project.

• The contract stated that "Contractor to coordinate with County during construction for a location of stockpile onsite for unused embankment after excavation. County will haul off excess embankment from site after construction is completed."

• In accordance with that provision, Rosenow met with Weiss and the designated project superintendent at the beginning of the Project to get approval for the location of the relevant dirt stockpile.

• During that discussion, the participants were made aware that there would be a significant amount of excess dirt left over at the end of the Project.

• The location designated for the original stockpile was autho-
rized by Weiss and the project superintendent even though
its location was on top of an area that was going to have a
driveway constructed later during the Project.
• The location chosen for the stockpile was due to logistical
constraints on where the dirt was capable of being placed
within the boundaries of the Project.
• The parties were made aware that the stockpile would be in
the way during later stages of the Project.
• Later in the Project, on the first day that Nebraska Digging
began backfilling dirt from the stockpile, Rosenow raised
concerns and made numerous inquiries to Britt and Weiss con-
cerning the plan for excess dirt left over from that stockpile.
• A meeting was held in October 2023 to address the aforemen-
tioned concern, among other issues.
• During the October 2023 meeting attended by Britt, Weiss,
Sunderman, and Rosenow, the parties agreed and acknowl-
edged that the excess dirt stockpile was an obstruction to
completion of the Project and needed to be moved.

According to Rosenow's rendition of the facts from this
meeting, the following discussions and resolutions ensued:
• Rosenow suggested that the stockpile could be moved to
the location of another nearby stockpile, which would clear
the impediment to completing the Project and which Rosenow
claimed would be more cost effective than other solutions.
• Rosenow claimed that Britt rejected his suggestion and
directed him to relocate and "waste" dirt in multiple areas.
• Rosenow raised the need for a written change order for the
additional work to relocate the stockpile, but Weiss and Britt
rejected submitting a written change order because it would
require a board meeting and would hold up progress on
the Project.
• Rosenow claimed that, as an alternative, Britt informed him
the additional work associated with moving the stockpile
would be documented as an overrun on the Project and
instructed Rosenow to track the number of truckloads used

to complete the additional dirt work with the understanding that the number of truckloads would be used to determine the overrun payment.
- Sunderman likewise testified that Britt indicated at this meeting that the relocation of the stockpile would constitute and be paid as an overrun and that a change order was not required because it would hold up the Project.
- Rosenow claimed that Britt instructed him to "waste" dirt within the Project in such a way that would add an additional 2 feet to the driveway, make the "ditch bottoms" 5 feet instead of 8 feet, build up the areas around the box culvert, and move some of the dirt from the original stockpile to other areas outside the Project boundaries based upon agreements obtained by Mainelli Wagner and Nemaha County with nearby landowners.
- Rosenow claimed that this work was beyond the original scope of the Project and that Nemaha County and Mainelli Wagner were aware that such work constituted a change to the original engineering plans.
- Rosenow asserted that as a result of the meeting, Nebraska Digging began tracking the number of truckloads hauled to complete the excess work, which tracking was not done previously in relation to the Project.
- After completing the work and supplying the number of truckloads, Britt emailed Nebraska Digging, asking them what they thought was a fair price for the additional work.
- In response, Nebraska Digging requested $12 per cubic yard to correspond with the unit price under the original contract.
- Appellants were ultimately denied compensation for the work associated with moving the stockpile.

In response to Rosenow's version of events, Nemaha County presented the following:
- Britt agreed that the stockpile had to be moved because it was impeding construction progress and that he took part in the October 2023 meeting but asserted that his information on

- 335 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

where to move the stockpile was merely a suggestion on how to "waste" the dirt without impacting the Project.

- Britt asserted that the ultimate decisions on the stockpile's location related to the means and methods of the construction, which was Vogtscapes' responsibility, and it was not within the scope of his authority under the contract to dictate the locations of the stockpile.
- Britt testified that he proposed the plan governing where to "waste" dirt and obtained approval from Mainelli Wagner on the proposed changes to "waste" more dirt so that there was less dirt to haul away.
- Britt acknowledged that he discussed relocating the dirt and the opportunity to charge for it as an overrun but that was only in the event it was agreed upon.
- Britt testified that despite his discussions with Appellants, he was not authorized to approve extra expenses and there was never an agreement reached on the price and quantity of material excavated or moved. Britt acknowledged engaging in numerous email discussions and conversations involving the parties regarding the payment for the placement of the excess dirt.
- Britt stated that once he received the pay application and email from Rosenow about charging $12 per cubic yard as provided in the unit cost on the summary of quantities form, he believed that the price was too high for compensation.
- Weiss stated in his affidavit, "I never told anyone that Nemaha County would pay more than the total contract amount for Vogtscapes . . . to move the dirt stockpile that was in a location that blocked the completion of the project." He then stated, "I did not have the authority to agree that Nemaha County would pay more than the contracted amount without a vote by the full County Board."
- Weiss testified in his deposition that he "walked off" during the October 2023 meeting and only learned of the plan to move the stockpile and the plan to "waste dirt" through Britt, who informed him of the plan reached.

- 336 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

- Weiss acknowledged that Britt came up with some ideas on how to "waste dirt within the [P]roject" and that Britt then got approval from Mainelli Wagner for those ideas and then gave Nebraska Digging the go ahead to implement the ideas.
- Weiss stated that Britt informed him that they were not going to do a written change order.
- Weiss testified in his deposition that when Britt informed him of the plan to waste dirt, Weiss said two things: "[W]hatever you decide and I'm not paying any extra money." However, Weiss stated that he was not involved in any conversations with Nebraska Digging or Vogtscapes about extra payment on the Project.
- Weiss acknowledged that changes were made to the original engineering plans in order to waste more dirt so that there would be less dirt to haul away.
- Weiss acknowledged that Britt was authorized to make changes to the engineering plans so long as he had authorization from Mainelli Wagner.
- Weiss testified that Rosenow should have never placed the stockpile in the original location at the start of the Project and that regardless of any extra work performed by Nebraska Digging, the contract price was set by Vogtscapes based on its proposal, knowing that variables may arise and that Nemaha County did not have a separate contract with Nebraska Digging.

## Pleadings

After the dispute arose between the parties following the Project's completion on the total contract price to be paid, Appellants filed a complaint against Nemaha County in the district court alleging claims for breach of contract, "Prompt Pay Act," and equitable relief. The complaint alleged facts as laid out above. Appellants further alleged that the additional cost to relocate the stockpile was approximately $92,470.80 plus interest, based on the total yardage moved and the standard unit price of $12 per cubic yard. Appellants

- 337 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

alleged that their payment requests were denied by Nemaha County. Appellants further alleged they entered into a common interest/joint claims prosecution agreement wherein Vogtscapes agreed to allow Nebraska Digging to prosecute the claims on Vogtscapes' behalf and that Appellants complied with the Political Subdivision Tort Claims Act.

In its answer, Nemaha County admitted that it entered into a contract with Vogtscapes to complete the Project; that Vogtscapes entered into a separate subcontract with Nebraska Digging for the performance of some dirt work; that Nemaha County's engineer was responsible for the supervision of the Project; that the parties participated in a meeting to discuss a change order to move the dirt stockpile; that Appellants requested payment from Nemaha County, which Nemaha County denied; that Nemaha County informed Nebraska Digging that it would not pay them for dirt moving that was necessitated by Nebraska Digging's piling dirt in an unauthorized location; and either that Vogtscapes had performed all the necessary obligations and conditions precedent under the contract with Nemaha County or that such obligations or conditions had been waived. Nemaha County generally denied the remaining allegations but specifically denied that it directed Nebraska Digging to perform additional work or that it entered into an oral agreement for Nebraska Digging to move the stockpile and agreed to pay Nebraska Digging as an overrun to the total excavation price.

## MOTION FOR SUMMARY JUDGMENT

Nemaha County filed a motion for summary judgment alleging that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. During the hearing thereon, the district court received evidence, including affidavits from Britt, Weiss, and an attorney representing Appellants; depositions of Britt, Weiss, Sunderman, and Rosenow; the contract between Vogtscapes and Nemaha County; and the parties' briefs in support of their respective arguments.

- 338 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

The record reveals the parties do not dispute that they entered into a valid contract, that a dirt stockpile created during the course of the Project was required to be relocated in order for the Project to be completed, or that Vogtscapes successfully completed the Project. The only dispute relates to the total amount Appellants are entitled to under the contract for the work performed. Nemaha County argued that the contract was a lump-sum contract and specifically stated that the full amount to be paid under the contract was $752,311 and that "no additions or deletions, except by written change order as set forth in the Contract," were permitted. Nemaha County asserted that no written change orders were approved for the contract; Appellants did not submit any written change orders for Nemaha County to consider; the excavation, dirt moving, grading, and backfill operations were all an intrinsic part of the lump-sum contract; Appellants were requesting payment in excess of the agreed contractual amount and therefore the "Prompt Pay Act" did not apply; and Appellants were not entitled to any equitable relief.

In their brief in opposition to summary judgment, Appellants argued that the parties orally agreed to modify the contract, the "Prompt Pay Act" applied to the additional work completed by Appellants, Nemaha County was unjustly enriched by the additional work completed to Appellants' detriment, and genuine issues of material fact existed as to whether the additional work performed was within the contract or was a modification. In support of their argument, Appellants offered evidence, including the pleadings and transcripts from the depositions of Britt, Weiss, Sunderman, and Rosenow.

### DISTRICT COURT ORDER

On May 30, 2025, the district court entered an order granting Nemaha County's motion for summary judgment and dismissing Appellants' complaint. The district court found that the contract was not ambiguous and controlled the outcome of the motion for summary judgment, that removal of the dirt

- 339 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

stockpile was work contemplated by the contract, that the excavation and backfill were subsidiary to items for which direct payment was made and not paid separately, that Nemaha County did not change or add to the Project, and that even if the work was outside the scope of the contract, Appellants did not submit a written change order for Nemaha County to consider. Appellants have now timely appealed from the district court's order.

## ASSIGNMENT OF ERROR

Appellants' assignments of error can be consolidated into the following issue: The district court erred in granting summary judgment in favor of Nemaha County when genuine issues of material facts existed.

## STANDARD OF REVIEW

[1,2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *D&M Roofing & Siding v. Distribution, Inc.*, 319 Neb. 707, 24 N.W.3d 850 (2025). An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Id.*

[3] The interpretation of a contract and whether the contract is ambiguous are questions of law subject to independent review. *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020).

## ANALYSIS

Appellants assign that the district court erred in granting summary judgment in favor of Nemaha County. More specifically, Appellants contend that summary judgment was improper when genuine issues of material fact existed as to

- 340 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

whether the contract's written change order provision had been waived and whether there was an oral modification of the contract and underlying engineering plans.

[4-6] Summary judgment is proper when the pleadings and the evidence admitted at the hearing disclose that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022). The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits. *Id*. In the summary judgment context, a fact is material only if it would affect the outcome of the case. *Id.*

Appellants do not dispute that the contract contains a written change order provision that required changes to be approved by Nemaha County and Mainelli Wagner. However, Appellants assert that a question of fact exists concerning whether Nemaha County waived the change order provision and authorized the additional work performed by Nebraska Digging. Appellants further assert that a question of fact exists as to whether the requested or suggested changes to the contract by Mainelli Wagner amounted to a modification of the contract requiring additional work for additional compensation. Appellants contend that, because these issues are factual issues that the district court was not permitted to resolve at the summary judgment stage, the district court improperly granted summary judgment in favor of Nemaha County.

Here, the district court found that the relocation of the dirt stockpile was within the scope or contemplated by the express terms of the contract; Nemaha County did not propose a change to the design of the Project, nor did Nemaha County add to the Project; and if Vogtscapes felt that the dirt work was outside the scope of the contract, the contract provided a procedure by which additional work or labor could be accounted for by submitting a change order, but that

- 341 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

Appellants failed to submit any change order for Nemaha County to consider.

Appellants contend that the court erred in making factual determinations for purposes of summary judgment regarding whether the relocation of the stockpile was extra or additional work authorized pursuant to an oral modification and whether the lack of a written change order to account for the additional work was due to a waiver by Nemaha County.

A similar issue was raised in *D. K. Meyer Corp. v. Bevco, Inc.*, 206 Neb. 318, 292 N.W.2d 773 (1980). In that case, the trial court found in favor of a subcontractor, D. K. Meyer Corp. (Meyer), for additional work performed on the contract notwithstanding its failure to procure a written change order from the contractor, Bevco, Inc., prior to performing the additional work. Bevco assigned error to the trial court's determination, which the Nebraska Supreme Court framed and explained as follows:

> Bevco contends that error was committed by the lower court because the work was performed by Meyer without its first receiving a written change order pursuant to the contract entered into by Bevco and Meyer. Said contract was a "Standard Sub-Contract Agreement," which provided in relevant part: "[T]hat no extra work shall be allowed or changes made by the Sub-Contractor, or paid for by the Contractor unless and until authorized by the Contractor or his superintendent in writing before the work and/or changes are begun." It is undisputed that a written change order for the modifications performed was never given to Meyer. However, we conclude that the failure to obtain a written change order does not bar Meyer's recovery herein. In *Griffin v. Geneva Industries, Inc.*, 193 Neb. 694, 696-97, 228 N.W.2d 880, 882 (1975), we stated: "It is well-established that the parties to a contract may avoid such a provision where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of the provision, or the party

- 342 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

claiming the benefit of the provision is estopped to rely on it. Annotation, 2 A. L. R. 3d 620."

*D. K. Meyer Corp.*, 206 Neb. at 321, 292 N.W.2d at 775.

In finding that the parties waived the written change order provision in the contract in relation to the record before it, the Nebraska Supreme Court held:

The record sustains the conclusion that the parties herein ignored the provision of the contract requiring a written change order prior to the modification of the project. "The interpretation given a contract by the parties themselves while engaged in the performance of the contract is one of the best indications of the true intent of the parties and, ordinarily, that construction of the contract should be enforced."

*Id*. at 322, 292 N.W.2d at 775. In support of that finding, the Nebraska Supreme Court stated:

All parties to the construction project agreed that modifications were necessary for the completion of the project, which modifications were performed by Meyer, without objections by Bevco. While it is not clear from the record which party specifically authorized the modifications, it is, however, apparent from the evidence adduced at trial that the parties, including Meyer and Bevco, inferentially agreed to the modifications. Meyer incurred additional expenses in performing the modifications in a total amount of $ 3,891.40.

*Id.* at 320, 292 N.W.2d at 774-75.

In reviewing the evidence provided by Appellants in a light most favorable to them, as we must in performing a summary judgment analysis, we reach a similar conclusion here. On this record, Rosenow established that prior to placing the original dirt stockpile in its location, he consulted with Weiss regarding the stockpile's placement, and obtained approval for it, due to logistical concerns associated with where the stockpile could be placed within the boundaries of the Project. At that time, Rosenow indicated Weiss was aware

- 343 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

that the stockpile's placement would be in the way of future progress of the Project, and that excess dirt would be left over after backfilling was complete. Once Nebraska Digging began backfill work, Rosenow again indicated that excess dirt would remain in the stockpile and commissioned a meeting to discuss how the stockpile would be managed in order to complete the Project.

At an October 2023 meeting, attended by Britt, Weiss, Sunderman, and Rosenow, Rosenow was instructed that the remaining dirt in the stockpile needed to be moved, and the parties discussed different options associated with moving it. Rosenow suggested moving the dirt to another nearby stockpile, a more economical option, but that option was rejected by Britt, who instructed Rosenow to move the dirt to several different locations. Notably, at that meeting, Rosenow asserted that he believed that the work constituted additional work under the contract for which Nebraska Digging was entitled to additional compensation. As such, he proposed submitting a written change order for the additional work associated with relocating the stockpile. According to Rosenow, the parties at the meeting acknowledged that the work constituted an "overrun" on the Project and that they did not want progress to be hindered by a change order process. As such, Rosenow asserted that Britt told him to move the dirt as he instructed, track the number of truckloads of dirt hauled, and submit the additional work as a project overrun for which Nebraska Digging would be paid. And the engineering plans were changed to designate how Nebraska Digging was directed to move or "waste" the dirt. As a result, Nebraska Digging performed the work and began tracking the number of truckloads hauled to submit for payment. After submitting a payment request, Nebraska Digging was ultimately denied payment on the basis that Nemaha County contended that the work did not constitute a project overrun and that Appellants failed to obtain a written change order as required by the contract.

- 344 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

We recognize that Nemaha County presents a somewhat different version of facts. Those facts include Weiss' statement that he did not approve the original location of the stockpile and that he did not meaningfully participate in the October 2023 meeting or suggest the work constituted an overrun or would be paid. And Britt acknowledges there was a discussion about a change order at the meeting but claims that he did not have the authority to unilaterally agree to a contract change or overrun and felt more was required to effect a contract change that was never adequately pursued.

But, in construing these facts in a light most favorable to Appellants, we determine there remained material issues of fact that precluded summary judgment here. First, the district court found that the contract unambiguously provides that the relocation work was contemplated under the original agreement. That conclusion is disputable here. The contract most certainly did include all dirt work, but that dirt work required Nebraska Digging to excavate and backfill, with the "County [to] haul off excess embankment from site after construction is completed." And the only reason the stockpile had to be relocated was due to its logistical placement, which placement was authorized by Weiss in advance of such placement as required by the contract.

[7] Regardless, there was evidence presented that during the course of the Project, Rosenow took the position that the relocation was additional work as he construed the contract, and Britt, who was designated as an agent of Nemaha County to decide questions that "[arose] with reference to the intent of the Contract Documents and compliance therewith," appeared to agree with that interpretation, had the engineering plans modified, and instructed Rosenow to treat the additional work as a Project "overrun" and to bill for it. And as the Nebraska Supreme Court stated in *D. K. Meyer Corp. v. Bevco, Inc.*, 206 Neb. 318, 322, 292 N.W.2d 773, 775 (1980): "'The interpretation given a contract by the parties themselves while engaged in the performance of the contract is one of the best

- 345 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

indications of the true intent of the parties and, ordinarily, that construction of the contract should be enforced.'" At a minimum, there remained a triable issue of fact as to whether Mainelli Wagner, as agent for Nemaha County, interpreted the contract to deem the work additional work during the performance of the contract.

[8] Second, the district court found that even if the work constituted "additional work," Appellants failed to procure a written change order as required by the contract. But as stated in *D. K. Meyer Corp.*, 206 Neb. at 321, 292 N.W.2d at 775: "'It is well-established that the parties to a contract may avoid such a provision where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of the provision, or the party claiming the benefit of the provision is estopped to rely on it.'"

Here, under Appellants' version of the facts, after requesting to submit a written change order following Britt's interpretation that the relocation work constituted an overrun on the Project, Rosenow was told not to submit a written change order as it would slow down the Project, but that Nebraska Digging would be paid for the additional loads and to begin tracking them. This alleged representation was made during the October 2023 meeting attended by Weiss and Britt and, according to Rosenow, provided the reason Nebraska Digging moved forward with the additional work without obtaining a written change order. Again, on this record, we find Appellants presented a genuine issue of material fact as to whether Nemaha County waived the written change order provision and orally agreed to modify the contract to pay Appellants for the additional work on the Project.

During oral argument, counsel for Nemaha County asserted that neither Britt nor Weiss had authority to bind Nemaha County to a contract modification. Stated differently, counsel argues that neither Britt nor Weiss had authority to waive the written change order provision under the contract or commit Nemaha County to paying for additional work under the

- 346 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
VOGTSCAPES, INC. v. NEMAHA COUNTY
Cite as 34 Neb. App. 329

contract. But these issues were not addressed by the trial court. Instead, the court found that the contract, as written, unambiguously provided that the relocation work was not additional work and found that Appellants failed to pursue a written change order as required under the contract. As we stated above, a factual question remains as to whether, during the course of the construction contract, the parties agreed that the stockpile relocation work did constitute additional work, waived the written change order provision, and agreed to additional compensation for the work performed. And a factual question remains as to what authority, if any, Britt and Weiss had to bind Nemaha County to the alleged waiver and contract modification. For instance, under the terms of the contract, among other things, the contract provides that "[Mainelli Wagner] is the agent of [Nemaha County] only to the extent provided in the Contract Documents or when specifically authorized to act on [Nemaha County's] behalf." On this record, there remains a triable issue of fact regarding what authority both Britt and Weiss had on behalf of Nemaha County to bind Nemaha County to the specified contract modifications, in addition to whether the modifications were ever made.

## CONCLUSION

For the reasons stated above, we reverse the order of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.